3:23-mj-00203

DISTRICT OF OREGON: ss,                                    AFFIDAVIT OF CLAY OTHIC

## Affidavit in Support of a Criminal Complaint

I, Clay Othic, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1. I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been so employed since 2020. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am authorized by law to conduct investigations and to make arrests for felony offenses. I am currently assigned to the Assistant Special Agent in Charge, Portland, Oregon. Prior to this, I was employed as a Special Agent with Immigration and Naturalization Service from 1996 to 2004. I am authorized and assigned to investigate violations of federal laws, including 18 U.S.C. § 545, that covers smuggling, and 21 U.S.C. §§ 841(a)(1), 846, 848, 843(b), and 952(a) of the Drug Abuse Prevention and Control Act of 1970, that is, possession with intent to distribute and the distribution of controlled substances, conspiracy to commit such offenses, the operation of a continuing criminal enterprise, and the use of a communication facility to facilitate a felony violation of the Drug Abuse Prevention and Control Act of 1970, and the illegal importation of a controlled substance. During my tenure as a federal law enforcement officer, I have investigated and/or participated in investigations of conspiracy, money laundering, narcotics trafficking, fraud, smuggling and theft. I have also acquired knowledge and information about the illegal drug trade and the various means and methods by which it is furthered including using computers, smart phones, digital media and the Internet from formal and informal training, other law enforcement officers and investigators, informants, individuals I have arrested and/or interviewed, and from my participation in other investigations. I am currently detailed to the High Intensity Drug Trafficking Area (HIDTA)

Interdiction Taskforce (HIT) located at the Portland Police Bureau's Narcotics and Organized Crime Division.

2.   This affidavit is based upon a joint investigation, conducted by the HIDTA Interdiction Task Force (HIT), Portland Police Bureau (PPB), and Homeland Security Investigations (HSI).

### Purpose of Affidavit

3.   This affidavit is submitted to support a criminal complaint and arrest warrant for Nasir OVERTON, a male, date of birth xx/xx/2003 (hereinafter referenced as "OVERTON"), for committing the crimes of Distribution of a Controlled Substance (fentanyl), resulting in serious bodily injury and death; Possession with the Intent to Distribute a Controlled Substance (fentanyl), resulting in serious bodily injury and death; and, Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance (fentanyl), resulting in serious bodily injury and death, all in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846.

4.   I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and, from records, documents and other evidence obtained during this investigation. I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other related investigations.

5.   I know that drug traffickers are increasingly selling counterfeit M30 prescription pills that are manufactured with fentanyl, a Schedule II controlled substance. These counterfeit pills are designed to replicate real 30 mg Oxycodone pills, which are round, blue in color, and stamped with an "M" and "30" on them. Drug dealers regularly counterfeit these pills and, while attempting to replicate the round shape, the blue color, and the stamp of "M" and "30," they are

instead manufacturing these pills with fentanyl as the active ingredient.  The counterfeit pills, while looking roughly similar to the real thing can sometimes be distinguished based upon their appearance.  The counterfeit M30 pills often have a different shade of blue than the real thing and sometimes they are even manufactured in different colors, the edges of the pills and the stamped impressions are often rough and lack the precision of a real 30 mg Oxycodone Hydrochloride pill, and sometimes the counterfeit pills will crumble easily under pressure.  I have seen and seized hundreds of thousands of these counterfeit M30 pills and, of the samples submitted for forensic analysis, lab reports have always confirmed the presence of fentanyl within them.  I also know it has become common knowledge in both the drug trafficking and drug using community that these pills contain fentanyl.  I know a user amount of a counterfeit M30 pill is often one pill at a time, which can either be ingested or burned and inhaled.  Depending on the level of addiction, some addicts will use between 5 to 15, or more pills in a day. These pills can sell on the street to a user for between $.50 to $10, or more.  I know a typical user of powdered fentanyl will burn it on a piece of tin foil and inhale the fumes.  Some users will simply inhale the powdered fentanyl.  A user of powdered fentanyl will use it in quantities of less than 1/10 of a gram.  I know that the possession of more than 100 of these counterfeit M30 pills or more than several grams of powdered fentanyl is indicative of possession for purposes of further distribution.  I also know that fentanyl is a very strong synthetic opioid that is 50 to 100 times more potent then heroin and morphine and that two milligrams of fentanyl can be a fatal dose.  Fentanyl, like other opioids, causes drowsiness and sedation.  Someone taking too much fentanyl can very quickly lose consciousness and stop breathing and, within minutes, they can die because they aren't breathing and thus not enough oxygen is getting to their organs.

///

**Summary of Probable Cause**

6. On September 20, 2023, at 1547 hours, Detective Jones respond to Randall's Children's Hospital regarding a 15-year-old that had overdosed on fentanyl. Detective Jones learned the victim, hereinafter Juvenile Victim, had ingested a blue M30 pill the day prior and was brought to the ER and was in a coma and not expected to survive. Detective Jones also learned several of Juvenile Victim's friends had firsthand knowledge of the incident.

7. Detective Jones met with and interviewed Juvenile Friend-1 (a 15-year-old female) who arrived at the hospital with her mother, hereinafter Mother of Juvenile Friend-1. Detective Jones interviewed Juvenile Friend-1.

8. Juvenile Friend-1 told Detective Jones that Juvenile Victim came over to her apartment on September 19, 2023, at approximately 1500 hours. Her friend Juvenile Friend-2 (a 13 year old male) was also present. Juvenile Victim had what Juvenile Victim believed to be an "Oxy pill." Juvenile Friend-1 told Juvenile Victim it was a fake pressed pill. The pill was a small blue pill with M30 stamped on it. Juvenile Victim took the pill anyways. Juvenile Friend-1 said that Juvenile Victim was fine for 10-15 minutes then closed her eyes. Juvenile Friend-1 thought Juvenile Victim went to sleep. Juvenile Friend-1 said she checked Juvenile Victim's pulse and felt it. About seven (7) minutes later Juvenile Friend-1 said she noticed that Juvenile Victim's lips were purple, and when she checked Juvenile Victim, she felt no pulse. Juvenile Friend-1 then called 911 and performed CPR on Juvenile Victim until medical arrived. Juvenile Friend-1 thought Juvenile Victim got the pill from an adult individual named "Noni" who is a friend of Juvenile Friend-1's brother. Juvenile Friend-1 said Juvenile Victim did not say where/who she got the pill from. Juvenile Friend-1 said she did not think Juvenile Victim knew the pill was a fentanyl

///

pill.  Juvenile Friend-1 told Detective Jones the dealer "Noni" drove a silver Nissan car and her brother and her brother's friends know the dealer well.

9.      On September 21, 2023, Detective Jones spoke to the mother of Juvenile Friend-1 who told Detective Jones that he needed to speak to her children, Juvenile Friend-1 and Juvenile Friend-3 (a 14-year old male) again because they had more information regarding the overdose of Juvenile Victim and that their previous statements may not have been fully accurate.

10.     Detective Jones met the children outside the mother of Juvenile Friend-1's apartment.  The mother of Juvenile Friend-1 told her children to tell Detective Jones the truth.  Detective Jones spoke to Juvenile Friend-1 again and she told him that on September 19, 2023, her friend, Juvenile Victim, wanted to buy some "Oxy's."  I know that this is a reference to Oxycodone pills, which are often referred to as "Oxys."  At the time they were at an apartment on NE 42nd Ave/NE Going St. in Portland Oregon and they were there with another friend, hereinafter Juvenile Friend-2.

11.     Juvenile Friend-1 had communicated with her brother, Juvenile Friend-3, using Instagram messages to arrange for the purchase of drugs from a dealer who they knew from previous drug deals.  While riding on the school bus, Juvenile Friend-3 used his cell phone to reach out to his "plug," the drug dealer they knew as "Noni," to arrange the purchase of two "Oxy" pills for $11.  "Noni" agreed to deliver two "Oxy" pills to Juvenile Friend-3's sister and the deal was scheduled to take place later that day outside the apartment at NE 42nd Ave/NE Going St. in Portland, Oregon.  Juvenile Friend-3 then communicated with his sister, via Instagram messages, regarding the status of the deal.  Shortly thereafter, Juvenile Friend-1, Juvenile Victim, and Juvenile Friend-2 met the dealer, "Noni," after he parked near the apartment located in Portland, Oregon.  Upon arriving, "Noni" gave the two pills to Juvenile Friend-2.  Juvenile Victim was

afraid to give the money ($11) directly to the dealer, so Juvenile Victim gave the money to Juvenile Friend-1 and Juvenile Friend-1 gave the money to the dealer. "Noni" then gave Juvenile Friend-2 two (2) blue M30 "Oxy" pills and the three (3) children walked back to Juvenile Friend-1's apartment.

12. Juvenile Friend-2 handed the pills to Juvenile Victim. Juvenile Friend-1 said she looked at the blue M30 "Oxy" pills and told Juvenile Victim that she did not think the pills were real "Oxy" pills but rather were fake pressed pills with fentanyl in them. Juvenile Friend-1 described the pills as small blue pills with "M30" printed on them. The three (3) children went inside the apartment with the pills.

13. Inside the apartment, Juvenile Friend-1 said that Juvenile Victim crushed one (1) of the blue M30 pills and snorted it. Juvenile Friend-1 then crushed the other blue M30 pill and snorted it. Juvenile Friend-2 did not use any of the pills. According to Juvenile Friend-1, about seven (7) minutes later she noticed that Juvenile Victim appeared to be sleeping. Juvenile Friend-1 checked for a pulse and felt one. A few minutes later Juvenile Friend-1 said that Juvenile Victim 's lips had turned blue and she checked Juvenile Victim for a pulse again but could not feel one.[1] Juvenile Friend-1 then called 911. Juvenile Friend-1 talked to 911 and did CPR until medical personnel arrived.

14. Juvenile Friend-1 described the dealer "Noni" as a black male, approximately 20 years old, small dread locks or braids, dark skin, and driving a silver Nissan car.

///

---

[1] I recognize these symptoms has classic hallmarks of an opioid overdose. I know that a fentanyl overdose may lead to stupor (dazed or nearly unconscious); pinpoint-sized pupils; cold and clammy skin; cyanosis - blue discoloration of the skin, lips or fingernails; coma (unconscious, unable to awaken); and, respiratory depression and failure leading to death.

15. Detective Jones also spoke to Juvenile Friend-3 who stated he was at school when the deal took place, but admitted that he did set the deal up, and showed Detective Jones text messages on his phone arranging the deal. The text messages were to phone number 360-281-4353. A transcript of the messages is depicted below:

> At 1:36 pm Noni text *Lemme slide*.
>
> Junior text *wha*.
>
> Noni text *For them thangs*.
>
> Junior text *aii yup, 2 for $10 cash*.
>
> Noni replies *ok, send addy*.
>
> Junior sent ▉NE 42ND Ave.
>
> At 3:58 pm Junior text Noni *bro, my fuckin, friend, od on da oxy, what the fuck*.
>
> Noni responded *Bro,I didn't sell you oxy, why you hitting me*.

16. Juvenile Friend-3 gave Detective Jones the same description of "Noni" as Juvenile Friend-1 and added "Noni" was about 5'10" tall, with a thin build and some tattoos, who drives a newer, nice silver Nissan four (4) door car. Juvenile Friend-3 thought "Noni" lived in the Maddox Apartments near Delta Park and stated he had recently met "Noni" near the Maddox Apartments to buy marijuana.

17. Detective Jones searched phone number 360-281-4353 using law enforcement and public databases and eventually obtained the name of Nasir OVERTON, DOB xx/xx/2003 (hereinafter OVERTON). Based on the information provided by the involved persons Detective Jones told me he believed OVERTON was the individual who used phone number 360-281-4353 on September 19, 2023, and who provided the drugs to the children.

18. On September 22, 2023, Detective Jones spoke to Juvenile Friend-3 who stated that he had purchased marijuana from the dealer "Noni" in the past and knew him well. Detective

Jones showed Juvenile Friend-3 a picture of OVERTON. Juvenile Friend-3 said, "That's him, that's Noni." Detective Jones showed the same picture to Juvenile Friend-1 and she also positively identified OVERTON as the same person she purchased the two (2) pills from.

19. On September 22, 2023, Detective Jones again spoke to Juvenile Friend-1. During the conversation Juvenile Friend-1 mentioned that Juvenile Victim used a credit card to crush the pills and the card was still at the apartment. Detective Jones asked her to wait at the apartment so Detective Jones could come get the credit card.

20. Detective Jones arrived at apartment and Juvenile Friend-1 showed Detective Jones the credit card Juvenile Victim used to crush the pills. She also showed Detective Jones a wooden pestle Juvenile Victim crushed the pills on. The pestle appeared to have residue on it. Juvenile Friend-1 told Detective Jones that Juvenile Victim crushed the first pill and then snorted it with a rolled-up piece of paper. Detective Jones and Juvenile Friend-1 looked for the paper but could not find it in the trash. Juvenile Friend-1 told Detective Jones she did not want Juvenile Victim to use the pill alone, so Juvenile Victim crushed another M30 pill on the wooden pestle with the credit card and Juvenile Friend-1 then snorted the pill. Juvenile Friend-1 told Detective Jones she felt effects from the pill, but it was not a super strong feeling. She went on to tell Detective Jones how Juvenile Victim reacted to the pill. Juvenile Friend-1 stated Juvenile Victim was fine at first but soon went unconscious. Detective Jones collected the evidence for forensic testing.

21. On September 22, 2023, Detective Jones interviewed Juvenile Friend-2. Juvenile Friend-2 told Detective Jones that on September 19, 2023, he met with a black male in a silver car near Juvenile Friend-1's apartment and that the male gave him two (2) blue M30 pills which Juvenile Friend-2 then gave to Juvenile Friend-1 shortly thereafter. Detective Jones re-interviewed

Juvenile Friend-2 on October 6, 2023, and showed Juvenile Friend-2 a picture of OVERTON. Juvenile Friend-2 positively identified OVERTON as the person he knows as "Noni" and the same person who gave him two (2) blue M30 pills on September 19, 2023.

22.     Detective Jones showed me surveillance video from the apartment complex at XXXX NE 42ND Avenue in Portland, Oregon.  On the video I observed the following:  On September 19, 2023, at approximately 1430 hours, I observed a silver sedan drive up and then park on the northwest corner of NE Going St and NE 42ND Ave., Portland, Oregon.  The driver remained in the car and then shortly afterward Juvenile Friend-2 exited the apartment complex, walked across the street, and contacted the driver.  Shortly afterwards, I observed Juvenile Friend-1 and Juvenile Victim exit the apartment, approach the rear of the car, and pause.  Shortly thereafter, Juvenile Friend-1, Juvenile Victim, and Juvenile Friend-2 all returned to the apartment complex and the sedan drove away west on NE Going St.  In the surveillance video is appeared that Juvenile Victim was now carrying something in her hand.  The surveillance video was consistent with statements given to Detective Jones by Juvenile Friend-1 and Juvenile Friend-2.

23.     Following Juvenile Victim's overdose on September 19, 2023, she was transported to Randall's Children's Hospital where she remained in a coma and on life support until October 1, 2023, when she was pronounced deceased.  The same day, a hospital representative told Detective Jones that Juvenile Victim had tested positive for Norfentanyl, which is not used by first responders nor hospital staff.  At the hospital, Detective Jones talked with Juvenile Victim's father and learned that prior to the overdose she was an otherwise healthy child with no other health conditions.  Detective Jones also learned that paramedics treated Juvenile Victim at the scene with Narcan and believed that she had suffered a synthetic opioid overdose.  I know that Narcan (Naloxone) is an opioid antagonist medication that is used to reverse an opioid or synthetic opioid

overdoses. Fentanyl is a synthetic opioid. Detective Jones told me he believes it is more likely than not the Norfentanyl present in Juvenile Victim's system was from the blue M30 pill consumed by Juvenile Victim on September 19, 2023.[2]

24. On October 3, 2023, a Multnomah County Judge signed a warrant for cell phone records associated to phone number 360-281-4353 which Detective Jones and I know belongs to OVERTON. Detective Jones submitted the signed warrant to T-Mobile on October 4, 2023, and received the records the same day. Detective Jones and I reviewed the Timing Advance Data and noted that the geolocation data for OVERTON's phone location is consistent with the witness statements and surveillance video, specifically, the data shows the phone was located near/at NE 42nd Ave / NE Going St at the time of the drug deal on September 19, 2023, at approximately 1430 hours.

25. On October 19, 2023, I reviewed a lab report prepared by the Oregon Department of State Police Forensic Laboratory follow their processing of the wooden pestle and credit card collected on September 22, 2023, by Detective Jones. The residue on the wooden pestle used by Juvenile Victim to crush the M30 pills tested positive for Fentanyl, a Schedule II controlled substance, and residue on the seized credit card tested positive for Fentanyl and Methamphetamine.

26. I have also reviewed a blood toxicology report for Juvenile Victim and it found that she had both Fentanyl and Norfentanyl in her blood system.

///

---

[2] Norfentanyl is the immediate chemical intermediary in a synthesis process currently used by clandestine laboratory operators for the illicit manufacture of the Schedule II controlled substance fentanyl. It is also a metabolite of fentanyl.

27.     On November 18, 2023, Detective Jones and an Assistant United States Attorney talked with Juvenile Friend-1 and Juvenile Friend-2 again and they both confirmed what they previously told Detective Jones about how the deal with "Noni" took place and what happened with Juvenile Victim. They also admitted that they had ordered blue M30 pills from the person they knew as "Noni" within the past year and that "Noni" is known to sell M30 pills to high school students.

## Conclusion

28.     Based on the foregoing, I have probable cause to believe, and I do believe, that OVERTON has committed the crimes of Distribution of a Controlled Substance (fentanyl), resulting in serious bodily injury and death; Possession with the Intent to Distribute a Controlled Substance (fentanyl), resulting in serious bodily injury and death; and, Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance (fentanyl), resulting in serious bodily injury and death, all in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846. I therefore request that the Court issue a criminal complaint and arrest warrant for OVERTON.

///

///

///

29. Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Scott Kerin. AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
Clay Othic / Special Agent
Homeland Security Investigations

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at  1:01 pm   on November  29 , 2023.

*Jolie A. Russo*
HONORABLE JOLIE A. RUSSO
UNITED STATES MAGISTRATE JUDGE